THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JESÚS MARÍA RAMOS PADILLA, Defendant and Appellant.

No. CR-62-319.     Decided May 14, 1963.

*Esteban Susoni Lens, Herminio A. Miranda,* and *Santos P. Amadeo* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: Alicia Solá Velázquez, a young woman, worked as a maid in the house of Juan R. García Delgado, except Sundays when she was always off and did not go to that house. On Sunday, September 10, 1961, Alicia went to García's house, her employer, at six o'clock in the morning. She was scared and told García that she was afraid that Jesús María Ramos Padilla, appellant herein, would kill her. Shortly afterwards, about 7:30 a.m., when García came out of mass he saw appellant walking toward García's house. That same morning, about 11:30 a.m., witness Inocencio Hernández Cortés was standing at the door of a cafetín in Camuy. From there he could see a nearby place where there was a tap. Alicia arrived at that moment with a pail to fill it with water. She was alone. Defendant arrived shortly afterwards and asked Alicia what she planned to do "about a trial which was pending." She answered "that she did not plan to do anything about the trial because on three occasions he had attempted to kill her." Alicia started to walk, appellant pulled her by the arm and said something which witness Inocencio Hernández could not hear. After a brief conversation appellant left and Alicia picked up the pail of water and went on her way. The witness went inside the cafetín and figured that about five or six minutes later he heard the screams. They screamed "he cut her, he cut her."

What happened in the interval of time between the brief conversation witnessed by Inocencio Hernández in front of the tap and the screams is related by the eyewitness of the

facts, Virginia Cuba. Virginia lived on Eduardo Hernández Street of Camuy and at that moment she, Virginia, was in her bedroom. All of a sudden Alicia came into the room and "then he came in with a machete and slashed her" on her back. There was no provocation, there was no quarrel, there was no heated argument, the aggressor and the victim did not even talk to each other. He slashed her at the level of the nape, on the left side of the neck; he severed the third cervical vertebra, the jugular carotid and nervous arteries of the neck; he inflicted another cut on the trunk; he severed the sixth and seventh ribs and cut a lung; another at the level of the right shoulder; another on the left arm; another on the head, on the left mastoidal region, behind the left ear. While doing so appellant did not utter a word.

The trial was begun before a jury, but after the evidence for the prosecution and for the defense was heard the defense attorneys announced that they wished to waive the jury and to proceed with the trial by the court. The presiding judge questioned defendant at length in order to ascertain whether the latter knew what was happening, whether he was intelligently waiving the jury, whether he knew the difference between a trial by a jury and a trial by the court, and whether that was defendant's wish. The latter insisted personally on waiving the jury.

The weapon was admitted in evidence without objection by the defense. It is a short and heavy machete, one of those known as dagas used in the Puerto Rican fields. It was a new daga, evidently purchased ad hoc.

The trial court found defendant guilty of the crime of murder in the first degree, as charged in the information, and of carrying prohibited weapons.

The only error assigned on appeal is to the effect that the trial court erred in sentencing defendant for a crime of murder in the first degree.

█ The error was not committed. All murder which is deliberate and premeditated is murder in the first degree, § 201 of the Penal Code, 33 L.P.R.A. § 633. The evidence in the case at bar shows deliberation. Appellant had threatened his victim on previous occasions. He must have threatened her again early in the morning of the day of the occurrence, since Alicia, contrary to her practice, came that Sunday to the house where she was working; she was scared and said that she was afraid that defendant would kill her. Early in the morning defendant went after her; at 7:30 a.m. he was seen on the way to García's house where Alicia was. Nothing happened at that hour, but he went back at noontime to get her when Alicia went to the tap to get water. They spoke to each other. There was no provocation on the part of the victim; there was no heated argument; there was no quarrel. We have already related what a nearby witness heard of that conversation. Part of the conversation was in such a low tone—what defendant said to Alicia before he left—that the witness did not hear it. Defendant moved away. Shortly afterwards he followed her inside the residence of witness Virginia Cuba and there he killed her by inflicting several wounds on the back with a machete. He did it with a new weapon. That day defendant was not carrying the daga to do any work; it was Sunday. The court did not err in rationally inferring deliberation. Since deliberation is a subjective act of defendant, it cannot be established by direct evidence and it is necessary, therefore, to resort to the facts of the case in order to determine whether deliberation may be rationally inferred, *People* v. *Blanco*, 77 P.R.R. 726, 733 (1954); *People* v. *Rosario*, 67 P.R.R. 346, 350 (1949). The elements of premeditation and deliberation, essential to a conviction of murder in the first degree, may be inferred from the manner in which a deadly weapon is used, as well as from the other circumstances and relation of the parties, and from the acts and conduct of the defendant, *People* v.

*Román,* 70 P.R.R. 48, 52 (1949). To constitute deliberation it is not necessary that a specific period of time should elapse between the intention to kill and the killing; premeditation may take place an instant prior to the act, and premeditation may exist regardless of how rapidly the act is executed, *People* v. *Méndez,* 74 P.R.R. 853, 860 (1953). The law does not require a specific lapse of time for the deliberation and premeditation essential to a conviction of murder in the first degree, *People* v. *Román, supra* at 52. It is murder in the first degree to kill an unarmed person by stealthily approaching him and stabbing him in the back, *People* v. *Santiago,* 49 P.R.R. 657, 664 (1936).

The judgment rendered in this case by the Superior Court, Arecibo Part, on December 11, 1961 will be affirmed.